**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

JEFF GOLMON,

Plaintiff,

v.

NOVO NORDISK INC.,

Defendant.

C.A. No. 3:24-cv-02368-K

**NOVO NORDISK INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................ 1
FACTUAL BACKGROUND ........................................ 3
A. FDA Approved Ozempic® as Safe and Effective in 2017. ........................................ 3
B. Overview of Plaintiff's Allegations and Procedural History. ........................................ 3
LEGAL STANDARD ........................................ 5
ARGUMENT ........................................ 5
I. Texas Law Bars Plaintiff's Claims, All of Which Sound in Failure to Warn. ........................................ 5
II. Plaintiff's Claims Fail Under the Learned Intermediary Doctrine. ........................................ 9
III. Plaintiff's Conclusory Claims Are Not Plausibly Pled. ........................................ 11
A. Plaintiff's Gross Negligence Claim Is Not Adequately Pled (Count A). ........................................ 11
B. Plaintiff's Negligent Misrepresentation Claim Fails as a Matter of Law (Count B). ........................................ 13
C. Plaintiff's Design Defect Claim Is Barred by Federal Preemption and Foreclosed Under Comment k (Count C). ........................................ 14
D. Plaintiff's Demand for Exemplary Damages Is Not Adequately Pled. ........................................ 17
CONCLUSION ........................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Ackermann v. Wyeth Pharm.*,
526 F.3d 203 (5th Cir. 2008) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2, 5, 10

*Buckman Co. v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001) .......... 8

*Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*,
770 F.3d 322 (5th Cir. 2014) .......... 16

*Centocor, Inc. v. Hamilton*,
372 S.W.3d 140 (Tex. 2012) .......... 10, 11, 16

*Clark v. Deutsche Bank Nat'l Tr. Co.*,
No. 14-CV-3590-B, 2016 WL 931216 (N.D. Tex. Mar. 11, 2016) .......... 17

*Cooper v. Pfizer, Inc.*,
No. H-14-3705, 2015 WL 2341888 (S.D. Tex. May 13, 2015) .......... 7

*Elmazouni v. Mylan, Inc.*,
220 F. Supp. 3d 736 (N.D. Tex. 2016) .......... 6, 7, 13

*Gonzalez v. Bayer Healthcare Pharm., Inc.*,
930 F. Supp. 2d 808 (S.D. Tex. 2013) .......... 10

*Holland v. Hoffman-La Roche, Inc.*,
No. 3-06-CV-1298, 2007 U.S. Dist. LEXIS 84507 (N.D. Tex. 2007) .......... 16

*Lashley v. Pfizer, Inc.*,
750 F.3d 470 (5th Cir. 2014) .......... 7

*Lofton v. McNeil Consumer & Specialty Pharm.*,
672 F.3d 372 (5th Cir. 2012) .......... 6, 8

*Medina v. Zuniga*,
593 S.W.3d 238 (Tex. 2019) .......... 11, 12

*Moncibaiz v. Pfizer Inc.*,
532 F. Supp. 3d 452 (S.D. Tex. 2021) ....................7, 16, 17

*Mutual Pharmaceutical Co. v. Bartlett*,
570 U.S. 472 (2013)....................15

*Nix v. Major League Baseball*,
62 F.4th 920 (5th Cir. 2023) ....................9

*In re Norplant Contraceptive Prod. Liab. Litig.*,
955 F. Supp. 700 (E.D. Tex. 1997)....................13

*Petersen v. Johnson*,
57 F.4th 225 (5th Cir. 2023) ....................5

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011)....................14, 15

*Rosenberger v. LeMaster*,
678 S.W.3d 549 (Tex. App.—Houston [14th Dist.] 2023, no pet.)....................13

*Schiller v. Physicians Res. Grp.*,
342 F.3d 563 (5th Cir. 2003) ....................9

*Sourcing Mgmt., Inc. v. Simclair, Inc.*,
No. 11-CV-02663-F, 2012 WL 12884918 (N.D. Tex. Feb. 27, 2012)....................17

*Robinson ex rel. T.R. v. Eli Lilly & Co.*,
No. 17-CV-338, 2018 WL 4039703 (E.D. Ky. Aug. 23, 2018) ....................15

*Thurston v. Merck & Co.*,
415 F. App'x 585 (5th Cir. 2011) ....................9

*Williams v. General Binding Corp.*,
No. 3:23-CV-00850-K, 2024 WL 3816765 (N.D. Tex. June 5, 2024)....................12, 17

*Yates v. Ortho-McNeil-Janssen Pharms., Inc.*,
808 F.3d 281 (6th Cir. 2015) ....................15

**Statutes and Regulations**

21 U.S.C. § 355....................1

21 C.F.R. § 314.70....................15

Fed. R. Civ. P. 12....................5

Fed. R. Evid. 201 ....................7

Tex. Civ. Prac. & Rem. Code § 41.003 ....................................................................................17

Tex. Civ. Prac. & Rem. Code § 82.001 ......................................................................................6

Tex. Civ. Prac. & Rem. Code § 82.007 ...........................................................................5, 6, 8, 9

**<u>Other Authority</u>**

Restatement (Second) of Torts § 402A......................................................................................16

Defendant Novo Nordisk Inc. moves to dismiss Plaintiff's Second Amended Complaint in its entirety.

**INTRODUCTION**

Plaintiff Jeff Golmon's Second Amended Complaint fails to cure any of the fatal defects identified by Novo Nordisk in its earlier motion to dismiss (Doc. Nos. 27 and 28). Plaintiff continues to allege only that he experienced blindness after his doctor prescribed Ozempic® (semaglutide) to treat his diabetes, and that Novo Nordisk failed to adequately warn of that risk. Plaintiff's claims, all of which sound in failure to warn, still fail for multiple independent reasons:

*First*, the Texas Product Liability Act ("TPLA") provides a rebuttable presumption that a prescription medication's warnings are ***adequate as a matter of law***. The U.S. Food and Drug Administration ("FDA") must approve New Drug Applications, including the medication's label, before a manufacturer markets a prescription medicine. 21 U.S.C. § 355(b)(1). Here, it is undisputed that the FDA approved Ozempic® and its warning label and thus Plaintiff must plead facts to rebut the presumption that the label is adequate. Plaintiff's attempt to do this – the only quasi-substantive addition to his Second Amended Complaint – falls far short. *See* Second Am. Compl. (Doc. No. 38) ¶¶ 7-8. Texas law recognizes only a limited set of facts that would rebut the presumption. Plaintiff's barebones allegation "upon information and belief" that Novo Nordisk knew of the alleged link between Ozempic and blindness either before or after approval and withheld that information from FDA is not sufficient. Under Fifth Circuit precedent, Plaintiff would have to allege that FDA *itself* found fraud, which Plaintiff does not (and cannot) do. Thus, Plaintiff's claims must be dismissed.

*Second*, even if Plaintiff could plead that the TPLA's narrow exceptions apply, Texas's learned intermediary doctrine would nevertheless foreclose them. Under that doctrine, the manufacturer of a prescription medication has a duty to warn the prescribing physician, rather than

the patient directly. And to state a failure-to-warn claim, a plaintiff must plead that his or her prescribing physician reviewed the FDA-approved label and would have changed his or her prescribing decision if the label contained the plaintiff's proposed warning instead of the FDA-approved one. Novo Nordisk raised this defect in its earlier motion to dismiss (Doc. No. 27) and Plaintiff's Second Amended Complaint adds three words that attempt to address this. *See* Second Am. Compl. ¶ 9 ("Upon information and belief, Defendant failed to warn both prescribers and the end users of Ozempic of the complications and devastating effects of which the company knew or should have known . . . ."). Plaintiff's conclusory assertion, made upon information and belief, does not plead facts that raise a right to relief. As explained in Novo Nordisk's first motion to dismiss, Plaintiff has failed to allege factual information regarding his prescribing physician's conduct. Therefore, Plaintiff has not alleged causation to support his claims in light of the role of the learned intermediary in selecting prescription medications.

*Third*, all of Plaintiff's claims, including negligence/gross negligence (Count A), negligent misrepresentation (Count B), design defect (Count C), and boilerplate request for exemplary damages, are only supported by conclusory allegations akin to "the defendant did me wrong." In other words, this is a classic example of a threadbare Complaint that must be dismissed under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1] Again, Plaintiff was aware of these pleading problems and made no attempt to address the deficiencies in the Second Amended Complaint.

*Finally*, Plaintiff's design defect claims are barred by implied preemption because federal law prohibited Novo Nordisk from changing the FDA-approved formulation of the medication.

[1] For purposes of this motion, Defendant takes as true the well-pled facts in the Second Amended Complaint without admitting their accuracy.

For these reasons, this Court should dismiss all of Plaintiff's claims with prejudice.

## FACTUAL BACKGROUND

### A. FDA Approved Ozempic® as Safe and Effective in 2017.

Ozempic® is a once-weekly prescription medicine used to treat Type 2 diabetes. Ozempic® is part of a class of medicines known as glucagon-like peptide-1 receptor agonists (GLP-1RAs for short). GLP-1RA medicines have been on the market for nearly two decades and, in that time, have revolutionized the treatment of Type 2 diabetes and obesity. FDA first approved Ozempic® in 2017 as "an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus." *See* Ozempic® Label, dated Oct. 2022, at 1 (attached as Ex. A to the Declaration of Meagan D. Self). Ozempic® is also indicated "to reduce the risk of major adverse cardiovascular events in adults with type 2 diabetes mellitus and established cardiovascular disease." *Id.* Before its approval, the safety and efficacy of the medicine was evaluated in seven phase 3 clinical trials in which 3,150 patients were treated with Ozempic®. *See id.* at 6.[2] The safety and efficacy profile of the medicine is reflected in its FDA-approved product labeling, which specifically warns of the risk of vision changes in patients taking Ozempic®. *Id.* at 25, 28 (unpaginated).

### B. Overview of Plaintiff's Allegations and Procedural History.

Plaintiff's Second Amended Complaint remains light on details. He is a Texas resident. Second Am. Compl. ¶ 1. He claims that he "was prescribed and took Ozempic related to [his] diabetes" and, "[a]s a result of Plaintiff's use of Ozempic, Plaintiff has suffered from blindness." *Id.* ¶¶ 5-6. The factual assertions end there. In fact, Plaintiff does not even allege when his blindness began or whether he claims it is permanent. The remainder of the Second Amended Complaint contains only conclusory legal allegations; for example, he claims that Defendant

[2] Novo Nordisk attaches the October 2022 Ozempic® label because that appears to be the relevant label based on medical records received from Plaintiff's counsel.

breached its duty of care because Defendant knew, or should have known, of "unreasonable, dangerous side effects without an adequate warning." *Id.* ¶ 15. He also attempts to plead around the TPLA. *Id.* ¶ 7 ("Upon information and belief, Novo Nordisk knew of the link between the use of Ozempic and blindness before obtaining FDA approval but withheld that information from the FDA through the course of the approval process. Alternatively, Novo Nordisk has learned of the link between the use of Ozempic and blindness since obtaining FDA approval but has withheld that information from the FDA in order to maintain its approved status."). Plaintiff neither alleges any facts about this purported "link" between Ozempic and blindness nor does he allege that FDA found such a link and found Novo Nordisk withheld relevant information from it.

Plaintiff brings three claims under Texas law: (1) Negligence/Gross Negligence, (2) Negligent Misrepresentation, and (3) Negligence – Design Defect. He includes a boilerplate demand for exemplary damages, claiming that Defendant acted with "malice." *Id.* ¶ 39.

Plaintiff originally filed suit in Texas state court. Novo Nordisk removed the case to this Court on September 19, 2024. Doc. No. 1. On November 21, 2024, Novo Nordisk filed its motion to dismiss Plaintiff's Second Amended Petition. Doc. No. 27. After the motion was briefed, the Court issued an order permitting Plaintiff a chance to amend and explaining that, "The Court warns Plaintiff that if he chooses to stand on the adequacy of his state court petition and the Court finds merit in Defendant's Motion to Dismiss, Plaintiff will NOT be afforded another opportunity to amend his petition prior to dismissal and his claims will be dismissed with prejudice." Doc. No. 37. Plaintiff filed his Second Amended Complaint on April 14, 2025, which is nearly identical to his previous complaint except that it attempts to add two sentences with thread-bear allegations that Novo Nordisk committed fraud on the FDA. Second Am. Compl. ¶¶ 7-8.

## LEGAL STANDARD

The Court should grant a Rule 12(b)(6) motion to dismiss when the plaintiff fails to state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a court must "accept as true" all well-pleaded facts on a motion to dismiss, courts must not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). In considering a motion to dismiss, the court considers, *inter alia*, the well-pled facts in the complaint and documents appropriate for judicial notice. *Petersen v. Johnson*, 57 F.4th 225, 228 n.1 (5th Cir. 2023).

## ARGUMENT

### I. Texas Law Bars Plaintiff's Claims, All of Which Sound in Failure to Warn.

The TPLA creates a statutory presumption of non-liability in any pharmaceutical product liability case premised on a failure to warn. Plaintiff cannot overcome this presumption, and his attempt to plead one of the narrow statutory exceptions falls far short.

Section 82.007 creates a "rebuttable presumption" that defendants are "not liable with respect to the allegations involving failure to provide adequate warnings or information" if the FDA approved "the warnings or information that accompanied the product in its distribution." Tex. Civ. Prac. & Rem. Code § 82.007(a)(1). The statute contains five narrow exceptions, including if the manufacturer engaged in fraud on the FDA, withdrawal of the product from the market, off-label promotion, off-label prescription (only relevant to prescriber-defendants), and bribery of a public official or witness. *Id.* § 82.007(b)(1)-(5). The presumption against liability

applies regardless of whether a plaintiff pleads negligence, strict liability, misrepresentation, breach of warranty, "or any other theory." Tex. Civ. Prac. & Rem. Code § 82.001(2). "Texas adopted § 82.007 as a tort reform measure, intentionally restricting certain common law claims concerning FDA-approved drugs except where such claims closely parallel the procedures and results required by the agency itself." *Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 376 (5th Cir. 2012).

Courts routinely dismiss cases like this one where the plaintiff essentially asserts *res ipsa loquitur* claims based solely on an adverse reaction to a medication. For example, in *Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 738 (N.D. Tex. 2016), the plaintiff alleged that his wife died after treatment with a fentanyl patch. After using the patch for three days, the decedent died with "fatal" levels of fentanyl in her blood. *Id.* at 739. The court dismissed all of the claims. *Id.* at 747. As an initial matter, the court took judicial notice of the contents of the FDA approval letter and label for the fentanyl patch. *Id.* at 740 (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)). Next, the court explained that plaintiffs had not plausibly alleged a manufacturing defect. *Id.* at 741 ("Texas law does not permit the inference of a defect to be drawn from the mere fact of a product-related accident"). And the court found that the remaining claims, regardless of whether they were labeled strict liability or negligent misrepresentation, amounted to failure-to-warn claims barred under Section 82.007.[3] *Id.* at 742-43.

Here, Plaintiff's Second Amended Complaint runs directly into the TPLA's rebuttable presumption of non-liability. The analysis is straightforward: Novo Nordisk is the manufacturer of Ozempic®, and the FDA approved Ozempic's® label before the product was sold to the public.

---

[3] The Court also held that the claims were barred by the implied preemption doctrine that applies to generic prescription medicines, *Elmazouni*, 220 F. Supp. 3d at 742, which is not at issue here.

It is appropriate for this Court to take judicial notice of the Ozempic® label pursuant to Federal Rule of Evidence 201; the October 2022 product label for Ozempic® is attached as Exhibit A. *See Elmazouni*, 220 F. Supp. 3d at 740; *see also Cooper v. Pfizer, Inc.*, No. H-14-3705, 2015 WL 2341888, at *2 & n.1 (S.D. Tex. May 13, 2015) (taking judicial notice of the contents of an FDA-approved label).

Plaintiff's claims sound in failure to warn. He alleges that "Defendant breached its duty of care to Plaintiff and Plaintiff's treating physicians, in the warning, testing, monitoring, and pharmacovigilance of Ozempic," meaning that Defendants knew or should have known of a side effect but failed to warn about it. Second Am. Compl. ¶ 16. His negligence, gross negligence, negligent misrepresentation, and design defect claims all allege that Novo Nordisk failed to warn of the risk of blindness. *Id.* ¶¶ 16, 23(b) ("Defendant supplied false information for the guidance of others."), 27 ("Defendant owed a duty to consumers including Plaintiff and his health care providers, to assess, manage, and communicate the risks, dangers, and adverse effects of Ozempic."). Like in *Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452, 461 (S.D. Tex. 2021), Plaintiff's design defect claim "is in substance one for failure to warn" because the Complaint turns on the notion that he would not have been prescribed Ozempic® if Novo Nordisk had warned his physician of the risk of blindness. *Cf. Lashley v. Pfizer, Inc.*, 750 F.3d 470, 476 (5th Cir. 2014) (applying Texas law and explaining that non-failure-to-warn claims against generic defendants were simply an attempt to repackage failure-to-warn claims that were barred by preemption).

Plaintiff has alleged no facts establishing market withdrawal or bribery. Moreover, Plaintiff conceded that he took Ozempic® to treat his diabetes, Second Am. Compl. ¶ 5, so he cannot plead off-label use. In the face of Novo Nordisk's earlier motion to dismiss, it appears that Plaintiff is alleging fraud on the FDA:

> Upon information and belief, Novo Nordisk knew of the link between the use of Ozempic and blindness before obtaining FDA approval but withheld that information from the FDA through the course of the approval process. Alternatively, Novo Nordisk has learned of the link between the use of Ozempic and blindness since obtaining FDA approval but has withheld that information from the FDA in order to maintain its approved status.

Second Am. Compl. ¶ 7. That allegation falls far short under binding Fifth Circuit precedent. In *Lofton*, the plaintiffs filed product liability claims against a manufacturer stemming from the use of an over-the-counter medicine. 672 F.3d at 373. The Fifth Circuit held that Section 82.007(b)(1)'s fraud-on-the-FDA exception is preempted by federal law. *Id.* at 379. Applying the U.S. Supreme Court's decision in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, (2001), the Fifth Circuit determined that fraud on the FDA claims can only survive preemption if FDA *itself* has determined that the manufacturer committed fraud. *Lofton*, 672 F.3d at 379. The court reasoned that, because FDA alone is empowered "to punish and deter fraud against FDA" to achieve "a somewhat delicate balance of statutory objectives," state law fraud-on-the-FDA claims—like the evidence required to satisfy Section 82.007(b)(1)—"inevitably conflict" with those objectives. *Id.* at 367, 377 (quoting *Buckman*, 531 U.S. at 348, 350).

Here, Plaintiff's allegation that Novo Nordisk failed to disclose unspecified "information" to FDA is federally preempted. Such assertions "necessarily re-tread[] the FDA's administrative ground." *Id.* at 380. Courts avoid such an outcome for good reason. Litigating the adequacy of disclosures to FDA would compel manufacturers "to flood the FDA with information" in an effort to avoid liability. *Id.* Thus, where FDA has not found fraud, neither a court nor a jury may "interject varying views" on the sufficiency of a pharmaceutical manufacturer's submissions to FDA. *Id.*

Moreover, a dismissal with prejudice is appropriate. *See, e.g.*, *Thurston v. Merck & Co*., 415 F. App'x 585, 586 (5th Cir. 2011) (affirming dismissal of plaintiff's claims where the complaint did not plead facts sufficient to meet any of the exceptions to Section 82.007). Plaintiff is now on the fourth iteration of his complaint. Novo Nordisk's motion to dismiss gave Plaintiff notice of his pleading deficiencies—and even alerted him that fraud-on-the-FDA style assertions are preempted. Doc. No. 28, at 4 n.3. This Court warned Plaintiff that he would not be granted leave to amend if he stood on his complaint. Doc. No. 37. That is effectively the path Plaintiff chose when he added a single allegation that he knew was legally insufficient. In the face of statutes and caselaw that firmly foreclose his claims, affording Plaintiff another chance to amend would be futile. *See Nix v. Major League Baseball*, 62 F.4th 920, 935 (5th Cir. 2023) (affirming dismissal with prejudice); *Schiller v. Physicians Res. Grp*., 342 F.3d 563, 567 (5th Cir. 2003) (same).

Since Plaintiff is unable to plausibly plead any exceptions to Section 82.007, the Court should dismiss with prejudice all of Plaintiff's claims in light of Texas's presumption of non-liability.

* * *

The handful of additions to Plaintiff's Second Amended Complaint also failed to cure the many other deficiencies Novo Nordisk identified in its first motion. For completeness, Novo Nordisk restates those additional grounds for dismissal.

## II. Plaintiff's Claims Fail Under the Learned Intermediary Doctrine.

Even in the unlikely event that Plaintiff could overcome the TPLA's presumption of non-liability, his claims are still barred by Texas's learned intermediary doctrine. Plaintiff's Second Amended Complaint makes allegations that are not legally viable, including that Novo Nordisk failed to warn him directly. And he likewise fails to make substantive allegations necessary to

satisfy the doctrine, such as that his physician reviewed the Ozempic® label or that the physician would not have prescribed Ozempic® if an allegedly adequate warning were provided.

Manufacturers have a duty to warn of side effects about which they know or should have known at the time of sale. *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 153-54 (Tex. 2012).[4] Under the learned intermediary doctrine, the manufacturer's "duty to warn end users of the dangerous propensities of its product is limited to providing an adequate warning to an intermediary, who then assumes the duty to pass the necessary warnings on to the end users." *Id.* "[A] patient-purchaser's doctor stands between the patient and the manufacturer, professionally evaluating the patient's needs, assessing the risks and benefits of available drugs, prescribing one, and supervising its use." *Ackermann v. Wyeth Pharm.*, 526 F.3d 203, 207 (5th Cir. 2008) (citing *Wyeth-Ayerst Lab. Co. v. Medrano*, 28 S.W.3d 87, 91 (Tex. App.—Texarkana 2000, no writ)). In light of the learned intermediary doctrine, "a plaintiff must show that (1) the warning was defective, and (2) the failure to warn was a producing [*i.e.*, but for] cause of the injury." *Id.* at 208.

Here, a fatal defect to the Second Amended Complaint is its utter failure to contain any allegations that a different warning would have changed his prescribing physician's decision to prescribe Ozempic®. Accordingly, Plaintiff's claims should be dismissed. *See Gonzalez v. Bayer Healthcare Pharm., Inc.*, 930 F. Supp. 2d 808, 818 (S.D. Tex. 2013) ("Because Plaintiff does not allege that the warning to her healthcare provider was inadequate nor identify the warnings or materials which her doctor received or reviewed, much less demonstrate that the doctor would not have prescribed Mirena if the warning had been different, and does not allege facts necessary to show causation, she fails to satisfy *Twombly* and *Iqbal* as a matter of law.").

---

[4] The court in *Centocor Inc.* dealt with a different version of Section 82.007. 372 S.W.3d at 161 n.19.

Moreover, to the extent the claims are premised on an alleged duty of Novo Nordisk to warn Plaintiff directly, or breach of that purported duty, such claims also must be dismissed. *Cf. Centocor, Inc.*, 372 S.W.3d at 164 (rejecting exception to learned intermediary doctrine for direct-to-consumer advertisements). Thus, all of Plaintiff's claims should be dismissed to the extent they are based on an alleged failure to warn anyone besides Plaintiff's prescribing physician, including Plaintiff.

## III. Plaintiff's Conclusory Claims Are Not Plausibly Pled.

As explained above, Plaintiff's gross negligence and negligent misrepresentation, and exemplary damages claims all sound in failure to warn and must be dismissed. But they also fail for the independent reason that they do not plead plausible facts to support the requisite elements. Plaintiff's negligent misrepresentation claim should be dismissed because it is duplicative of his negligence claim. And Plaintiff's design defect claim is barred by federal preemption and comment k.

### A. Plaintiff's Gross Negligence Claim Is Not Adequately Pled (Count A).

Plaintiff fails to adequately plead his claim for gross negligence because he did not allege any facts demonstrating that Defendant engaged in any conduct that involved extreme risk or exhibited conscious indifference to the consequences of its actions, as required under Texas law.

Plaintiffs must show both objective and subjective components to prove gross negligence. *Medina v. Zuniga*, 593 S.W.3d 238, 247 (Tex. 2019) (citing *Reeder v. Wood Cty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012)). "First, viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Id.* (internal quotation marks omitted). An extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Id.* (internal quotation marks omitted). "Second, the

actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Id.* (internal quotation marks omitted). To establish that subjective component, "the plaintiff must show that the defendant knew about the peril [at the time], but his acts or omissions demonstrate that he did not care." *Id.* at 248 (quoting *Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005)).

For example, in *Williams v. General Binding Corp*., No. 3:23-CV-00850-K, 2024 WL 3816765, at *2-3 (N.D. Tex. June 5, 2024) (Kinkeade, J.), the plaintiff's gross negligence claim was supported by conclusory allegations that lacked the necessary factual support to demonstrate the extreme risk or conscious indifference required. The plaintiff's complaint had "little to say" beyond reciting the legal standard, falling far short of the fact-pleading required in federal court. *Id.* at *3. The Court dismissed because the plaintiff's claims were framed in terms of ordinary negligence rather than gross negligence. *Id.*

Here, Plaintiff's Second Amended Complaint does not satisfy the pleading requirements for gross negligence. Plaintiff does not cite a single reported case of blindness besides himself. As in *Williams*, Plaintiff "alleges no facts supporting [the] characterization of the risk as extreme except [his] own injury," and "provides the Court with no factual allegations clarifying the likelihood or magnitude of such injuries." 2024 WL 3816765, at *3. Likewise, Plaintiff only relies on boilerplate assertions to support the subjective component of gross negligence. He merely alleges that Novo Nordisk knew or should have known of a risk of blindness, but such "allegations speak in the language of ordinary negligence rather than the language of gross negligence." *Id.* The Court should dismiss the gross negligence claim.

### B. Plaintiff's Negligent Misrepresentation Claim Fails as a Matter of Law (Count B).

The Court should dismiss Plaintiff's negligent misrepresentation claim because it is a restated and improperly pleaded failure-to-warn claim.

"The elements of a negligent misrepresentation claim are: (1) the defendant made a representation in the course of his business or in a transaction in which he has a pecuniary interest; (2) the representation conveyed 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." *Rosenberger v. LeMaster*, 678 S.W.3d 549, 567 (Tex. App.—Houston [14th Dist.] 2023, no pet.).

Negligent misrepresentation does not fit the facts of this case. Plaintiff does not plead justifiable reliance or any pecuniary loss stemming from a business transaction. In reality, Plaintiff's negligent misrepresentation claim simply reasserts that he allegedly was not warned of a blindness risk. Such claims boil down to failure-to-warn allegations that should be dismissed. *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997), *aff'd*, 165 F.3d 374 (5th Cir. 1999). In *In re Norplant Contraceptive*, the court explained that the plaintiff's misrepresentation claim failed as a matter of law because "whether the failure to warn is couched as an affirmative misrepresentation or a misrepresentation by concealment, the allegation collapses into a charge that the drug manufacturer failed to warn." *Id.* Moreover, courts in this Circuit have dismissed claims for negligent misrepresentation that sound in failure to warn because they are an obvious attempt to side-step the learned-intermediary doctrine. *See id.*; *Elmazouni*, 220 F. Supp. 3d at 743-44 (dismissing plaintiff's negligent misrepresentation claim where "these allegations are simply a restatement of Plaintiffs' failure to warn claim").

### C. Plaintiff's Design Defect Claim Is Barred by Federal Preemption and Foreclosed Under Comment k (Count C).

Plaintiffs in Texas rarely bring design defect claims relating to prescription medications because they face insurmountable hurdles. First, Plaintiff's state law claim that Novo Nordisk should have designed Ozempic® differently is preempted by federal law, which prohibits manufacturers from making major changes to an FDA-approved medication without FDA's prior approval. Second, as alluded to above, in the prescription drug context, design defect claims sound in failure to warn under the Restatement's comment k. Application of comment k demonstrates, once again, that Plaintiff's claims should be dismissed because they run headlong into Texas's presumption of non-liability.

#### *1. The Design Defect Claim Is Barred by Federal Preemption.*

Plaintiff's claim is premised on the contention that Ozempic® should have been designed differently. Yet federal law prohibits manufacturers like Novo Nordisk from changing the design of FDA-approved pharmaceuticals without FDA's prior approval. Thus, Plaintiff's design defect claim is impliedly preempted by federal law because Novo Nordisk could not independently take the action (*i.e.*, engage in a product redesign) that Plaintiff claims state law required.

Under the Supremacy Clause, conflict preemption exists if "it is impossible for a private party to comply with both state and federal requirements." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011) (internal quotation marks and citation omitted). The Supreme Court has explained that, in the pharmaceutical context, the touchstone of impossibility preemption is whether the defendant can unilaterally take action to satisfy state law duties without the prior approval of FDA: "[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency,

that party cannot independently satisfy those state duties for pre-emption purposes." *Id.* at 623-24.

The Supreme Court has applied this principle to bar a design defect claim against a pharmaceutical company. In *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472, 490 (2013), the Court explained: "Once a drug—whether generic or brand-name—is approved, the manufacturer is *prohibited* from making any major changes to the '*qualitative or quantitative formulation of the drug product, including active ingredients*, or in the specifications provided in the approved application.'" 570 U.S. at 477 (quoting 21 C.F.R. § 314.70(b)(2)(i)) (emphases added). A manufacturer may not make any change to the active ingredient in an FDA-approved medication without participating in a full NDA process. 21 C.F.R. § 314.70(h).

Here, Plaintiff's design defect claim would require major changes to the Ozempic® product. *See* 21 C.F.R. § 314.70(b)(1)-(2). Notwithstanding these federal regulations prohibiting design changes without prior FDA approval, the Second Amended Complaint asserts that Ozempic® "was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design or formulation." Second Am. Compl. ¶ 29. Plaintiff further claims Ozempic® had "lack of efficacy and increased safety risks" due to its design. *Id.* ¶ 30. Because a manufacturer cannot unilaterally make such major changes to an FDA-approved medication, this Court should dismiss Plaintiff's design defect claim as barred by conflict preemption. *See, e.g.*, *Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 300 (6th Cir. 2015) (holding plaintiff's design defect claims against a brand manufacturer were preempted by federal law); *Robinson ex rel. T.R. v. Eli Lilly & Co.*, No. 17-CV-338, 2018 WL 4039703, at *6 (E.D. Ky. Aug. 23, 2018) (explaining that preemption applied where plaintiff alleged that brand manufacturer

should have changed the composition of the drug, but that change was rendered impossible because there was no way to "independently [make] such fundamental changes to [the drug's] formula").

### *2. The Design Defect Claim Is Foreclosed Under Comment k.*

Although Plaintiff's design defect claim is preempted under federal law, it also fails under state law. To prevail on a design defect claim, a plaintiff must prove that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 330 (5th Cir. 2014) (applying Texas law and affirming dismissal of design defect claims). Claims involving prescription drugs are governed by comment k of § 402A of the Restatement (Second) of Torts. *See, e.g.*, *Centocor, Inc.*, 372 S.W.3d at 165. Comment k explains that some products "are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs." Restatement (Second) of Torts § 402A, cmt. k.

Courts applying Texas law have dismissed design defect claims because "[p]rescription drugs are not susceptible to a design defect claim where, as here, the drug is accompanied by proper directions and warning." *Holland v. Hoffman-La Roche, Inc.*, No. 3-06-CV-1298, 2007 U.S. Dist. LEXIS 84507, *8 (N.D. Tex. 2007) (internal quotation marks omitted). In *Moncibaiz*, the Court explained that "[i]t is inconsistent to argue that a prescription drug . . . was designed defectively simply because it may cause cancer or pose other health risks. To the contrary, such risks aren't defects but are rather unavoidable byproducts of proper design and manufacture." 532 F. Supp. 3d at 461. Here, Plaintiff's design defect claim fails because Texas law recognizes that FDA-approved prescription drugs necessarily have side effects; those side effects do not make the medicines defectively designed—they are instead inherent in their risk-benefit profile. Thus, Plaintiff's design defect claim is merely a repackaged failure-to-warn claim because it hinges on

whether the FDA-approved label that accompanied Ozempic® was adequate. *See id.*

**D. Plaintiff's Demand for Exemplary Damages Is Not Adequately Pled.**

Under Texas law, exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm resulted from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. Code § 41.003. Plaintiff fails to meet this high standard.

In very similar circumstances, this Court has dismissed plaintiffs' demands for exemplary damages with prejudice when they failed to adequately plead gross negligence. *See Williams*, 2024 WL 3816765, at *2-3; *see also Clark v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-3590-B, 2016 WL 931216, at *8 (N.D. Tex. Mar. 11, 2016), *aff'd*, 719 F. App'x 341 (5th Cir. 2018) (dismissing plaintiffs' claim for exemplary damages where "Plaintiffs have failed to plead an underlying claim which makes a plausible showing that Defendants acted fraudulently or with gross negligence"); *Sourcing Mgmt., Inc. v. Simclair, Inc.*, No. 11-CV-02663-F, 2012 WL 12884918, at *2 (N.D. Tex. Feb. 27, 2012) (same).

Here, Plaintiff makes no allegations that plausibly support a claim that his alleged damages resulted from fraud, malice, or gross negligence. Rather, Plaintiff makes conclusory allegations on this point, stating only that "Defendant's actions were done recklessly or intentionally, with a conscious indifference to the rights and welfare of Plaintiff, and with 'malice' as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code." Second Am. Compl. ¶ 39. These boilerplate legal conclusions do not come close to meeting the statutory standard for exemplary damages in Texas. *See Williams*, 2024 WL 3816765, at *2-3. Moreover, Plaintiff's conclusory demand for exemplary damages is undermined by the Ozempic® labeling, which includes extensive warnings and information demonstrating that Novo Nordisk and the FDA took great care in evaluating the potential side effects and compiling relevant warnings.

Plaintiff's request for exemplary damages should be dismissed.

## CONCLUSION

For the foregoing reasons, Novo Nordisk Inc. respectfully requests that its motion to dismiss Plaintiff's Second Amended Complaint be granted and that the Second Amended Complaint be dismissed with prejudice.

Dated: May 6, 2025


*/s/ Meagan Self*
Meagan Self
State Bar No. 24078453
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
meagan.self@us.dlapiper.com

Loren H. Brown (*pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020-1104
Telephone: (212) 335-4846
loren.brown@us.dlapiper.com

Ilana H. Eisenstein (*pro hac vice*)
Raymond M. Williams (*pro hac vice*)
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, Pennsylvania 19103
Telephone: (215) 656-3351
Facsimile: (215) 606-3351
ilana.eisenstein@us.dlapiper.com
raymond.williams@us.dlapiper.com

Katherine B.W. Insogna (*pro hac vice*)
**DLA PIPER LLP (US)**
33 Arch Street Suite 26th Floor
Boston, Massachusetts 02110
Telephone: (617) 406-6046
Facsimile: (617) 406-6183
katie.insogna@us.dlapiper.com

*Attorneys for Novo Nordisk Inc.*